1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOARD OF TRUSTEES OF THE
NORTHWEST IRONWORKERS
HEALTH AND SECURITY FUND et al.,

                Plaintiffs,

    v.

SKINNER STEEL AND
CONSTRUCTION LLC,

                Defendant.

CASE NO. 2:22-cv-01321-LK

ORDER GRANTING IN PART
MOTION FOR DEFAULT
JUDGMENT

      This matter comes before the Court on Plaintiffs' Motion for Entry of Default Judgment. Dkt. No. 17. Plaintiffs seek to recover unpaid employee benefit contributions from Defendant Skinner Steel and Construction LLC, who has not appeared or defended in this action. The Court grants the motion in part for the reasons set forth below.

## I.    BACKGROUND

      Plaintiffs Boards of Trustees of the Northwest Ironworkers Health and Security Fund, Northwest Ironworkers Retirement Trust, Northwest Field Ironworkers Annuity Trust Fund, and

1    Northwest Ironworkers & Employers Apprenticeship & Training Trust Fund (collectively, "the

2    Trust Funds") are joint labor-management funds created pursuant to Section 302(c) of the Labor

3    Management Relations Act, 29 U.S.C. § 186(c) ("LMRA"), and the Employee Retirement Income

4    Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Dkt. No. 1 at 2. Defendant Skinner Steel and

5    Construction LLC signed an Ironworker Independent Agreement binding it to the terms of the

6    Master Labor Agreement ("MLA") between the Northwest Ironworkers Employers Association

7    and the Ironworkers District Council of the Pacific Northwest and its affiliated Local Unions.  Dkt.

8    No. 13 at 2. The MLA and trust agreements require Skinner Steel to make contributions to the

9    Trust Funds on behalf of covered employees. *Id.*; Dkt. No. 1 at 3. Skinner Steel employed covered

10   employees during the relevant time but failed to make timely contributions to the Trust Funds for

11   work performed by employees covered by the MLA and trust agreements. Dkt. No. 1 at 3.

12          An audit initiated by the Trust Funds and the resulting "Random Fringe Benefit

13   Contributions Compliance Report" (the "2020 Audit") revealed that Skinner Steel failed to

14   adequately report covered hours or make required benefit contributions for the periods of January

15   2020 through December 2020. Dkt. No. 17 at 2. The Trust Funds allege that Skinner Steel was

16   "provided the Audit, but it did not contest the findings." *Id.* Instead, Skinner Steel "requested an

17   installment plan to pay the [delinquent contributions]." *Id.* The Trust Funds sent Skinner Steel

18   settlement documents and "advised that the Trusts would proceed with litigation if payment was

19   not received." *Id.* Skinner Steel then "ceased communicating with the Trusts and has not submitted

20   payment." *Id.* at 3.

21          The Trust Funds filed their complaint in September 2022 to recover contributions owed

22   and related relief from Skinner Steel. Dkt. No. 1. After the Trust Funds effected service and

23   Skinner Steel failed to appear or defend in this action, the Clerk of Court entered default against

24   it, Dkt. Nos. 7, 9, and the Trust Funds then moved for default judgment, Dkt. No. 17.

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 2

## II.   DISCUSSION

**A.   Subject Matter and Personal Jurisdiction**

The Court has subject matter jurisdiction over the Trust Funds' claims pursuant to Sections 502 and 515 of ERISA. 29 U.S.C. § 1132(e)(1) ("Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title."); *Id.* § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."); *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009) (explaining that Section 1145 provides a federal cause of action to enforce preexisting obligations created by collective bargaining agreements). Trust funds, including the Plaintiffs in this case, can bring claims as fiduciaries under sections 1132 and 1145. *See, e.g.*, *Locals 302 & 612 of the Int'l Union of Operating Eng'rs Constr. Indus. Health & Sec. Fund v. Barry Civil Constr., Inc.*, No. C16-0404-JPD, 2016 WL 4528462, at *3 (W.D. Wash. Aug. 29, 2016); *Operating Eng'rs Health & Welfare Tr. Fund for N. Cal. v. Adam Moreno & Sons, Inc.*, No. 20-cv-09155-TSH, 2021 WL 8153587, at *7 (N.D. Cal. July 8, 2021), *report and recommendation adopted*, 2021 WL 8153573 (N.D. Cal. Aug. 16, 2021).

The Court also has personal jurisdiction over Skinner Steel. Personal jurisdiction over a defendant may be acquired by personal service on that defendant, *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992), and the Trust Funds' service on Skinner Steel's governor, Lindsay Skinner, sufficiently establishes personal jurisdiction in this case. Dkt. No. 6; *see also* 29 U.S.C. § 1132(e)(2) (authorizing nationwide service of process).

Venue is proper in this district under 29 U.S.C. § 1132(e)(2) because at least part of the breach took place in this district, *see* Dkt. No. 13 at 10, 27, 48, 65 (Local Union No. 86 is located in Seattle, Washington), and the plan is administered in this district, *see* Dkt. No. 14.[1]

**B.    Legal Standard**

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. The Court has discretion to grant or deny a motion for default judgment. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors (the "*Eitel* factors") in deciding whether to grant a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

**C.    The Trust Funds Are Entitled to A Default Judgment**

The Court has considered the *Eitel* factors and finds that default judgment is appropriate in this case for the reasons discussed below.

1.    The Possibility of Prejudice to the Trust Funds

"[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014)

---

[1] The Trust Funds are cautioned that the Court expects non-conclusory allegations supporting venue in the future. Dkt. No. 1 at 2.

(citation and internal quotation marks omitted). Skinner Steel has failed to respond to this action, so default judgment is the Trust Funds' only means for recovery. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022). Thus, the first *Eitel* factor supports default judgment.

      2.  <u>The Merits of the Trust Funds' Substantive Claims and the Complaint's Sufficiency</u>

In evaluating the second and third *Eitel* factors, the Court considers the merits of the Trust Funds' claims and whether the allegations in the complaint are sufficient to state a claim on which they may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Section 515 of ERISA provides that employers must pay contributions required "under the terms of the plan or under the terms of a collectively bargained agreement," 29 U.S.C. § 1145, and Section 502 provides for a civil action and remedies, 29 U.S.C. § 1132(a), (g).

To prevail on an ERISA claim for unpaid contributions, "a plaintiff must prove that: (1) the trust funds are a qualified multi-employer plan as defined by 29 U.S.C. § 100[2](37); (2) the defendant is an employer obligated to contribute under the plan's terms, and (3) the defendant failed to contribute in accordance [with] the plan." *Trs. of S. Cal. IBEW-NECA Pension Plan v. Alarm Tech Sec. Sys., Inc.*, No. CV08-3432-PSG (PJWx), 2008 WL 4196627, at *3 (C.D. Cal. Sept. 8, 2008). The first factor is met because the complaint alleges that the Trust Funds are "joint labor-management Trust Funds" created pursuant to the LMRA and ERISA. Dkt. No. 1 at 2; *Trs. of S. Cal. IBEW-NECA Pension Plan*, 2008 WL 4196627, at *3 (finding that plaintiffs had adequately pled the first element by pleading that the trusts were multi-employer trusts created and maintained pursuant to the LMRA and/or collective bargaining agreements). Turning to the second factor, the Trust Funds have adequately established that Skinner Steel is an employer obligated to pay contributions under the trust agreements. Dkt. No. 1 at 2–3; Dkt. No. 13 at 2, 29–31, 67–69.

1    As for the third factor, the relevant trust agreements require Skinner Steel to make timely

2    employee benefit contributions to the Trust Funds, and the Trust Funds allege that Skinner Steel

3    failed to make complete and timely contributions for January 2020 through December 2020. Dkt.

4    No. 1 at 3–4. Specifically, the Trust Funds assert that Skinner Steel owes $27,330.80 in unpaid

5    contributions based on the 2020 Audit. *Id.* As discussed below, this amount, as well as the

6    requested sums for liquidated damages, pre-judgment interest on the unpaid contributions, audit

7    fees, attorney's fees, and costs, are supported by the trust agreements, MLA, and declarations and

8    exhibits filed in conjunction with the motion for default judgment. *See* Dkt. Nos. 13–15; *see also*

9    Dkt. No. 17. Thus, the Trust Funds have sufficiently pled a claim for violation of 29 U.S.C. § 1145,

10   and the claim has merit.

11         3.   <u>The Sum of Money at Stake in the Action</u>

12         Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in

13   relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp.

14   2d 1172, 1176 (C.D. Cal. 2002). This requires courts to assess whether the recovery sought is

15   proportional to the harm caused by Skinner Steel's conduct. "Default judgment is disfavored where

16   the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel*

17   *v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014), *abrogated on other grounds by*

18   *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020). The Trust Funds seek a

19   total of $42,889.10 against Skinner Steel comprised of the following amounts:

20         1.   $27,330.80 in delinquent contributions from January 2020 through December 2020;

21         2.   $5,601.95 in liquidated damages;

22         3.   $4,937.60 interest on unpaid contributions calculated through September 15, 2021;

23         4.   $2,554.25 in audit fees;

24

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 6

5.  $1,892.50 in attorney's fees; and

6.  $572 in costs.

Dkt. No. 17 at 4, 7–8; *see also* Dkt. No. 13 at 5, 86–90; Dkt. No. 15 at 2. The amount the Trust Funds seek is supported by the trust agreements, MLA, and declarations and exhibits filed in conjunction with the motion for default judgment. *See* Dkt. Nos. 13–15; *see also* Dkt. No. 17. And, as set forth more fully below, ERISA mandates an award of unpaid contributions, interest on delinquent contributions, liquidated damages, reasonable attorney's fees, and costs on a judgment for unpaid contributions. 29 U.S.C. § 1132(g)(2). Therefore, this factor weighs in favor of default judgment.

### 4.  The Possibility of a Dispute Concerning Material Facts

As for the fifth factor, no genuine issue of material fact exists. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

### 5.  Whether the Default Was Due to Excusable Neglect

Turning to the sixth factor, the record contains no indication that Skinner Steel's default was due to excusable neglect. Despite being given sufficient notice of this action, Skinner Steel has not appeared, responded to the motion, or contested the entry of default judgment. Because there is no evidence of excusable neglect, this *Eitel* factor favors the entry of a default judgment. *See Eve Nevada*, 2022 WL 279030, at *4.

### 6.  The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Federal Rule of Civil

Procedure 55(b) "indicates that 'this preference, standing alone, is not dispositive'" because Rule 55 allows a court to issue a default judgment if defendant fails to appear and defend. *PepsiCo, Inc.*, i238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C94-2684-TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Accordingly, although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of default judgment, especially where, as here, Skinner Steel has failed to appear or defend and the other *Eitel* factors weigh in favor of entering a default judgment.

In sum, the Court finds that the *Eitel* factors weigh in favor of entry of a default judgment for the Trust Funds.

## D.   The Trust Funds' Recovery

Having determined that a default judgment is warranted, the Court turns to the Trust Funds' recovery. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also* LCR 55(b). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that [it] may make a calculated decision as to whether or not it is in [its] best interest to answer." *Sacramento Area Elec. Workers Health & Welfare Tr. v. FAMCO*, No. 17-CV-03823-BLF, 2019 WL 13203780, at *2 (N.D. Cal. Nov. 20, 2019) (citation omitted). The Trust Funds' complaint prayed for: (1) $27,330.80 in delinquent contributions from January 2020 through December 2020; (2) $5,601.95 in liquidated damages; (3) $4,937.60 in interest; (4) $2,554.25 in audit fees; (5) "reasonable attorneys' fees, costs, and expenses of suit," and (6) "such other relief as this court deems just and equitable." Dkt. No. 1 at 4. Consistent with their complaint, the Trust Funds now request a total of $42,889.10 from Skinner Steel, consisting of (1) $27,330.80 in delinquent contributions from January 2020 through December 2020; (2) $5,601.95 in liquidated damages; (3) $4,937.60 in interest on unpaid contributions calculated through September 15, 2021; (4)

1   $2,554.25 in audit fees; (5) $1,892.50 in attorney's fees; and (6) $572 in costs. Dkt. No. 17 at 4,

2   7–8. Departing from their complaint, however, the Trust Funds also ask for post-judgment interest

3   at the rate of 18 percent per annum. *Compare* Dkt. No. 1 *with* Dkt. No. 13 at 3–4.

4       The Independent Agreement, MLA, and trust agreements obligate Skinner Steel to pay

5   each type of relief requested. *See* Dkt. No. 1 at 3–5; Dkt. No. 13 at 2–3, 8, 29–31, 67–69. ERISA

6   also provides for each type of relief requested in an action under 29 U.S.C. § 1145 on behalf of a

7   plan to collect delinquent contributions. *Id.* § 1132(g)(2). Section 1132(g)(2) "is 'mandatory and

8   not discretionary.'" *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996)

9   (quoting *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying, Co.*, 746 F.2d 557, 569 (9th

10  Cir. 1984)). However, a plaintiff seeking money damages must also "'prove-up' the damages"

11  sought through admissible evidence, *FAMCO*, 2019 WL 13203780, at *3 (citations omitted), and

12  again, a default judgment must not differ from what is demanded in the pleadings, Fed. R. Civ. P.

13  54(c). Accordingly, the Court must examine the appropriate amount of relief.

14      1.   Delinquent Contributions

15      The Trust Funds seek $27,330.80 in unpaid contributions for covered work conducted

16  between January 2020 and December 2020. Dkt. No. 17 at 7. Their motion includes a declaration

17  from Kyle Bailey, a payroll analyst program manager at Welfare & Pension Administration

18  Service, Inc., retained by the Trust Funds to calculate Skinner Steel's delinquency. Dkt. No. 14 at

19  1–2. Bailey states that on December 14, 2021, his office issued a "Random Fringe Benefit

20  Contributions Compliance Report" which showed Skinner Steel owed the Trust Funds $27,330.80

21  in delinquent contributions for the period of January 2020 through December 2020. *Id.* at 2, 7–10

22  (charts of unreported hours and contributions owed).  Bailey avers that this balance was determined

23  through comparing the "payroll registers, . . . employee list, State quarterly payroll tax reports and

24  trust fund remittance reports" provided by Skinner Steel to an internal determination of owed

1    contributions by Bailey's firm. *Id.* at 2. Bailey avers that the unreported hours were "due to the

2    employer not reporting employees performing bargaining unit work during the months of July,

3    August, and September 2020." *Id.*

4        Based on the supporting documentation provided, the Court awards the Trust Funds

5    $27,330.80 in unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(A).

6        2.   Liquidated Damages

7        The Trust Funds next requests $5,601.95 in liquidated damages. Dkt. No. 17 at 2. ERISA

8    provides for liquidated damages in "an amount equal to the greater of" interest on the unpaid

9    contributions or as provided for under the plan "in an amount not in excess of 20 percent" of unpaid

10   contributions. 29 U.S.C. § 1132(g)(2)(C). The MLA provides that delinquent employer "liquidated

11   damages are reasonably estimated to be 16% or $250, whichever is greater, but not to exceed

12   $20,000 per month." Dkt. No. 13 at 33, 70, 93, 96, 99, 102.[2]

13       Turning to the specific amount of liquidated damages requested, Bailey's declaration states

14   that he calculated the amount of liquidated damages using the formula in the trust agreements:

15   overdue contributions multiplied by 16% of the delinquent contributions for each month. Dkt. No.

16   14 at 2. However, he makes no mention of the $250 amount, which was apparently applied in

17   various months during the relevant time period. *See, e.g.*, Dkt. No. 13 at 90. Nor does the Trust

18   Funds' motion make any mention of that amount. It instead states that "[t]he calculation for the

19   liquidated damages is: (unpaid contributions) x (16%)." Dkt. No. 17 at 3. Multiplying the unpaid

20   contribution amount of $27,330.80 by 16% results in a liquidated damage amount of $4,372.93,

21   not $5,601.95. As counsel for the Trust Funds has previously been warned, "[t]he Trust Funds

22

23   ─────────────
     [2] The Iron Workers Independent Agreement provides for liquidated damages of 12% of the delinquent contributions;

24   however, it also provides that "the terms of the Master Labor Agreement shall govern in any case of conflict between
     the terms of this Independent Agreement and the Master Labor Agreement." Dkt. No. 13 at 8.

1    must show their work; the Court will not carry their burden for them." *Bd. of Trustees of Locs. 302*

2    *& 612 of Int'l Union of Operating Engineers Constr. Indus. Health & Sec. Fund v. RG Constr.,*

3    *Inc.*, No. 2:21-CV-01313-LK, 2023 WL 2741928, at *4 (W.D. Wash. Mar. 31, 2023). However,

4    although courts "are not like pigs, hunting for truffles buried in briefs[,]" *Ramsey v. Muna*, 819 F.

5    App'x 505, 507 (9th Cir. 2020) (cleaned up), in this instance the Court has thoroughly reviewed

6    the 2020 Audit and verified that the attached schedules support a $5,601.95 liquidated damages

7    award. This liquidated damages figure is also supported by the MLA. Dkt. No. 13 at 33, 70, 93,

8    96, 99, 102. The Court cautions the Trust Funds that it will not engage in such truffle-hunting

9    expeditions in the future.

10    The Court awards the Trust Funds $5,601.95 in liquidated damages pursuant to 29 U.S.C.

11    § 1132(g)(2)(C)(ii).

12    3.   Attorney's Fees

13    The Trust Funds seek $1,892.50 in attorney's fees. Dkt. No. 17 at 7. ERISA allows

14    recovery of "reasonable attorney's fees[.]" 29 U.S.C. § 1132(g)(2)(D). Awards for attorney's fees

15    in ERISA actions are calculated using a hybrid lodestar/multiplier approach. *Van Gerwen v.*

16    *Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). This approach has two parts: (1) the

17    court determines the lodestar amount by multiplying the number of hours reasonably expended in

18    the litigation by a reasonable hourly rate, and (2) the court may adjust the lodestar upward or

19    downward using a multiplier based on factors not subsumed in the initial calculation. *Id.* To

20    determine the total amount claimed, the Trust Funds used the lodestar method, and have not

21    requested an adjustment of that method. Dkt. No. 15 at 2–3, 5. Nor does the Court find that any of

22    the *Kerr* factors warrant an upward or downward adjustment. *See Kerr v. Screen Extras Guild,*

23    *Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (identifying and adopting 12 factors "to be considered in the

24

1   balancing process required in a determination of reasonable attorney's fees."), *abrogated on other*

2   *grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

3        The Court finds that counsel's hourly rate of $275–$285[3] per hour, Dkt. No. 15 at 2, is

4   reasonable for the work performed and for the Seattle market. *See Camacho v. Bridgeport Fin.,*

5   *Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate,

6   the relevant community is the forum in which the district court sits."); *Bds. of Trs. of Seattle Area*

7   *Plumbing & Pipefitting Indus. Health & Welfare Tr. v. Optimal Facility Sols., LLC*, No. 2:18-cv-

8   00443-RAJ, 2019 WL 5887292, at *2 (W.D. Wash. Nov. 12, 2019) (finding counsel's $290 hourly

9   rate to be reasonable in joint labor-management funds case).

10        The Court further finds that counsel for the Trust Funds' has reasonably performed 6.7

11   compensable hours of work on this matter. The Court therefore awards the Trust Funds $1,892.50

12   in attorney's fees for the billing entries listed between September 15, 2022, and May 24, 2023.

13   Dkt. No. 15 at 5.

14        4.  Costs & Audit Fees

15        The Trust Funds next request reimbursement for $572 in costs for the case filing fee and

16   for service of process. Dkt. No. 17 at 7–8; Dkt. No. 15 at 2, 7. ERISA allows recovery of the "costs

17   of the action." 29 U.S.C. § 1132(g)(2)(D); *see also, e.g.*, *Masonry Sec. Plan of Wash. v. Radilla*,

18   No. 2:20-00350-RAJ, 2021 WL 3602517, at *4 (W.D. Wash. Aug. 13, 2021) (awarding filing fee

19   and service costs in an ERISA action). In addition, the filing fee and costs of service are

20   recoverable under the provisions set forth in the trust agreements. Dkt. No. 13 at 33, 70, 94, 97,

21   100, 103. Thus, the Court awards $572 in filing and service costs.

22

23

24   [3] Plaintiffs' counsel Noelle Dwarzski increased her hourly rate from $275 to $285 effective January 1, 2023, incurring
     1.7 hours at the $275 rate an additional 5 hours at the $285 rate. Dkt. No. 15 at 2.

The Trust Funds also seek to recover the $2,554.25 that they incurred in audit costs in connection with the 2020 Audit. Dkt. No. 13 at 3, 86; Dkt. No. 17 at 4. Pursuant to the trust agreements, the Trust Funds are entitled to recover "audit costs incurred in the collection of delinquent contributions[.]" Dkt. No. 13 at 33, 70, 94, 97, 100, 103; *see also id.* at 8. Thus, the Court also awards $2,554.25 in audit costs. *See Bd. of Trs. of The Empl. Painters' Tr. v. Coast Mirror Co., Inc.*, No. 2:22-00570-MJP, 2023 WL 1068510, at *1 (W.D. Wash. Jan. 27, 2023) (awarding accounting fees to plaintiffs).

    5.  <u>Interest</u>

The Trust Funds further request $4,937.60 in interest on the unpaid contributions calculated through September 15, 2021. Dkt. No. 17 at 4; Dkt No. 14 at 2. An award of interest on unpaid contributions is authorized by 29 U.S.C. § 1132(g)(2)(B), and such interest "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g). Consistent with the statute and the MLA, the $4,937.60 in interest was calculated at 18% per annum upon each monthly contribution delinquency from the date the contributions first became due through September 15, 2021. Dkt. No. 14 at 2; Dkt. No. 13 at 8, 33, 70, 94, 97, 100, 103. Therefore, the Trust Funds are entitled to interest under the trust agreements and Section 1132(g)(2)(B) in the amount of $4,937.60.

Finally, based on the trust agreements and the MLA, the Trust Funds ask for post-judgment interest on the delinquent contributions at the same 18% per annum rate. Dkt. No. 13 at 4, 8, 33, 70, 94, 97, 100, 103.[4] "[W]hile prevailing parties are entitled to post-judgment interest at the statutory rate as a matter of right, *see* 28 U.S.C. § 1961, a party must demand post-judgment

---

[4] The proposed order includes post-judgment interest at a rate of 12% per annum, Dkt. No. 12-1 at 2, but this appears to be a typographic error in light of the references in the MLA and Independent Agreement to an 18% rate, Dkt. No. 13 at 33, 70, and the request in the Trust Agreement's declaration for "interest at 18% per annum until the contributions are paid" pursuant to the trust agreements, *id.* at 4.

1    interest at a contractual rate in the pleadings in order to receive it on a default judgment." *Gateway*

2    *Com., LLC v. Boshart*, No. 16-CV-81772-DMM, 2017 WL 7346367, at *3 (S.D. Fla. June 30,

3    2017) (citing Fed. R. Civ. P. 54); *see also, e.g., O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188,

4    1207 (10th Cir. 2004) (affirming district court's refusal to award plaintiffs contractual rate of post-

5    judgment interest because plaintiffs did not provide defendants adequate notice of such claim);

6    *Berholtz v. P4 Meditech Analytics, LLC*, 600 F. Supp. 3d 1128, 1136 (S.D. Cal. 2022) (refusing to

7    grant prevailing party post-judgment interest under California law where it was not demanded in

8    the pleadings); *BP Prod. N. Am., Inc. v. Youssef*, 296 F. Supp. 2d 1351, 1355 (M.D. Fla. 2004)

9    (refusing to grant prevailing party post-judgment interest at the contractual rate, where the

10   contractual rate was not demanded in the pleadings). The Trust Funds' generic request for "such

11   other and further relief as this court deems just and equitable," Dkt. No. 1 at 4, is insufficient to

12   satisfy Rule 54(c). *Berholtz*, 600 F. Supp. 3d at 1136; *see also Silge v. Merz*, 510 F.3d 157, 160

13   (2d Cir. 2007) (holding that a request for pre-judgment interest must be contained in the pleadings

14   and that "boilerplate" language requesting "further relief which this Court deems just and proper"

15   cannot "substitute for the meaningful notice called for by Rule 54(c), which anticipates that

16   defendants will look to the demand clause to understand their exposure in the event of default").

17   Accordingly, the Court awards the Trust Funds post-judgment interest at the rate fixed under 28

18   U.S.C. § 1961. *See, e.g., Berholtz*, 600 F. Supp. 3d at 1135–36.

### III.   CONCLUSION

20        For the foregoing reasons, the Court GRANTS IN PART the Trust Funds' Motion for

21   Default Judgment. Dkt. No. 17. Default judgment shall enter in favor of the Boards of Trustees of

22   the Northwest Ironworkers Health and Security Fund against Defendant Skinner Steel and

23   Construction LLC, as follows:

24

1.  Default judgment in the total amount of $42,889.10, consisting of $27,330.80 in delinquent fringe benefit contributions under ERISA for January 2020 through December 2020; $5,601.95 in liquidated damages; $4,937.60 in interest on unpaid contributions; $1,892.50 in attorney's fees; $2,554.25 in audit fees; and $572 in legal costs;

2.  Post-judgment interest at the rate fixed under 28 U.S.C. § 1961.

Dated this 26th day of March, 2024.

Lauren King
United States District Judge

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 15